IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td>JAMES JOSEPH OWENS-EL,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>      v.</td><td>*</td><td>CIVIL NO.: WDQ-11-0523</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>STEVEN BRUNSON, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

James Joseph Owens-El sued Steven Brunson and others[1] (the "Defendants") for malicious prosecution and other claims. Pending is the Defendants' motion for summary judgment. For the following reasons, the motion will be granted.

I. Background[2]

On August 7, 1978, Owens-El was sentenced to 25 years in prison for robbery of a person in possession of U.S. mail.[3] ECF

---

[1] The other Defendants are Mary Jo Williams, Paul R.A. Howard, Patricia Vines, and Isaac Fulwood of the U.S. Parole Commission ("Parole Commission"); and Natalie Vallandingham, Joyce McBride, and David Wonneman of the U.S. Probation and Pretrial Services Office ("Probation Office") in Baltimore.

[2] In reviewing the motion for summary judgment, Owens-El's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] His sentence was later reduced to 20 years. ECF No. 9, Ex. 1 at 4.

No. 11 at 2.  On January 23, 1984, Owens-El was sentenced to a consecutive 20-year prison term for assaulting a prison guard. *Id.*; *Owens v. Morgan*, No. 5:08-HC-2062-D, 2010 WL 5173617, at *1 (E.D.N.C. Dec. 14, 2010).

Owens-El has been diagnosed with multiple mental illnesses, including delusional disorder.  *Owens*, 2010 WL 5173617, at *1. On June 28, 2007, the Parole Commission conditioned Owens-El's parole on his participation in "an in-patient or an out-patient mental health program as directed by" his probation officer. ECF No. 9, Ex. 3.  On June 29, 2007, he was released on parole. ECF No. 9, Ex. 4.  On July 23, 2007, Owens-El appealed the special condition, alleging, *inter alia*, that the Probation Office "[r]etaliate[d]" against him, "racially profile[d]" him, and "torture[d] [him] via Biomedical Electromagnetic Beamed Energy Fraudulently concealing the Electronic Surveillance." ECF No. 9, Ex. 5 at 2.  He argued that he was not "mentally, psychologically, or otherwise incompetent of mind."  *Id.* at 3. The Parole Commission never decided the appeal.[4]  ECF No. 11 at 2.

On August 10, 2007, Owens-El underwent a psychiatric evaluation by Dr. Stacey Thompson. ECF No. 11 at 2.  Dr.

---

[4] A Parole Commission attorney reviewed the appeal and recommended affirming the condition, but the Parole Commission never made a formal decision.  ECF No. 9 at 3-4, Ex. 6.

Thompson concluded that Owens-El would benefit from psychiatric treatment, but "forced participation" may "further contribute to and worsen his current delusional state."[5]  *Id.*; Compl., Ex. 3 at 4.  She found that treatment was "much more likely to be successful" if it were "completely voluntary."  *Id.*  She also found a low risk that Owens-El would harm himself or others. *Id.*

On August 13, 2007, probation officer Joyce McBride told the Parole Commission that Owens-El had violated his parole by threatening to kill.  ECF No. 9, Ex. 7; ECF No. 11 at 2.[6]  On the same day, Case Analyst Patricia Vines recommended a parole violator warrant, Parole Commissioner Isaac Fulwood signed the warrant, and Owens-El was arrested.  ECF No. 9, Ex. 8-10.  On August 29, 2007, the Parole Commission found no probable cause for the alleged violation, and Owens-El was released.  ECF No. 9, Ex. 12-13.

---

[5] Thompson diagnosed Owens-El with delusional disorder.  Compl., Ex. 3 at 3.

[6] According to Owens-El's supervising officer, he had reported a recent trip to an employment assistance office, where two women reportedly referred to him as a "cop," and one said the Federal Bureau of Investigation ("FBI") "had a contract on him." Compl., Ex. 4 at 1.  Owens-El told his supervising officer, "What if I cash this check, buy a 9 mm and 40 rounds and kill everybody in the office[?]"  *Id.*  The supervising officer called the employment assistance office, where a staff member confirmed that Owens-El had visited the center, used obscene language, and said, "They need to mind their own fucking business[.]  [W]hat if I did have a shoot out with the police[?]"  *Id.* at 3-4.

On September 12, 2007, probation officer Natalie Vallandingham gave the Parole Commission Dr. Thompson's psychiatric report and asked for a hearing on whether to add another condition to Owens-El's parole: "the defendant shall comply with the medication regimen prescribed by psychiatrists." ECF No. 11 at 3; ECF No. 9, Ex. 14. Vallandingham noted that Dr. Thompson had told Owens-El that "he would benefit from taking antipsychotic medication" but Owens-El had "denied being mentally ill and declined the opportunity to take medication." ECF No. 9, Ex. 14 at 2.

On September 14, 2007, probation officer Robin Branch told the Parole Commission that Owens-El had asked his community advocate, Charlene Corruthers, to buy him a gun.[7] ECF No. 11 at 3. On September 14, 2007, Case Analyst Mary Jo Williams recommended that the Parole Commission issue a parole violator warrant charging Owens-El with (1) soliciting or aiding and abetting another to buy and transfer a firearm to a convicted felon, and (2) failing to abide by the mental health care condition of his parole.[8] ECF No. 9, Ex. 16. The warrant was

---

[7] According to Probation Office records, Corruthers called to report that Owens-El had told her that an FBI agent was trying to kill him, and Owens-El intended to kill him first. ECF No. 9, Ex. 15.

[8] The alleged violation of the mental health care condition was based on Vallandingham's report to the Parole Commission that

4

issued and Owens-El was arrested on September 20, 2007.  *Id.*, Ex. 19.

On October 26, 2007, the Parole Commission found probable cause for both charges.  ECF No. 9, Ex. 21.  At a December 5, 2007, parole revocation hearing, Examiner Paul Howard made no finding on the weapons purchase charge,[9] but recommended a finding that Owens-El had violated the mental health care condition.  ECF No. 9, Ex. 22.  Howard found that Owens-El had complied with a mental health assessment and agreed to counselling, but had refused to comply with Dr. Thompson's "total recommendation," which included taking medication.  *Id.* at 3.  Howard recommended that the Parole Commission revoke mandatory release and grant a parole date in six months.  *Id.* at 5.  On January 15, 2008, the Parole Commission revoked mandatory release and told Owens-El that his future parole would be subject to the special condition on mental health care.  ECF No. 9, Ex. 23.

On February 11, 2008, Owens-El appealed the Parole Commission's actions.  ECF No. 9, Ex. 24.  On May 12, 2008, the

---

Owens-El refused to take medication recommended as "part of his treatment plan." ECF No. 9, Ex. 20 at 1.

[9] Howard noted "insufficient evidence" of a violation.  ECF No. 9, Ex. 22 at 4.  At the hearing, Corruthers testified that Owens-El had never asked her to buy a gun, and "the conversation with the probation officer [had been] taken out of context." *Id.*

Parole Commission issued a corrected notice of action[10] granting Owens-El a parole date of July 18, 2008, and conditioning his parole on compliance with recommended mental health care treatment.  ECF No. 9, Ex. 25.  On May 20, 2008, Owens-El submitted a second appeal.  ECF No. 9, Ex. 26.

On July 1, 2008, Vallandingham asked the Parole Commission to add a parole condition that Owens-El "keep psychiatric appointments and comply with medication and treatment regimens prescribed by a psychiatrist," which may include "intramuscular injections and/or oral medications."  ECF No 9, Ex. 27 at 3.  Case Analyst Steven Brunson recommended adding the condition, which the Parole Commission adopted on July 10, 2008.  ECF No. 9, Ex. 28.

On July 15, 2008, psychiatrist Dr. Mark Cheltenham evaluated Owens-El and concluded that he "did not meet the criteria for being involuntarily medicated and additional attempts to force compliance with recommended medications may only worsen his delusions of persecution."[11]  Compl., Ex. 15 at 7.  On July 18, 2008, Owens-El's scheduled date of release, he remained in prison because he refused to sign a parole

---

[10] The Parole Commission discovered that it had not completed the voting process before issuing its January 15, 2008 notice of action.  ECF No. 9 at 7.

[11] Cheltenham diagnosed Owens-El with "delusional disorder, mixed type, grandiose and persecutory."  Compl., Ex. 15 at 5.

certificate with the condition that he take medication prescribed by a psychiatrist.  ECF No. 9, Ex. 32.

On July 24, 2008, a Parole Commission attorney determined that Owens-El's May 20, 2008 appeal had no merit.  ECF No. 9, Ex. 30.  On July 28, 2008, the Parole Commission told Owens-El that his appeal was denied because the medication condition would assist his probation officer with his supervision and "protect the community."  ECF No. 9, Ex. 31.

On March 6, 2009, Assistant Federal Public Defender Carrie Howie Corcoran[12] asked the Parole Commission to release Owens-El on parole.  ECF No. 9, Ex. 32.  On May 4, 2009, the Parole Commission held a special hearing on Owens-El's decision not to sign his parole certificate.  ECF No. 9, Ex. 34.  The hearing examiner recommended that a new parole date be scheduled and the parole certificate be revised to "more obvious[ly]" state that "the Commission intends for [Owens-El] to take psychotropic medication only if recommended by the Mental Health Care Provider in the community."  *Id.*

On July 18, 2009, Owens-El was released under the revised condition that he participate in mental health "aftercare" and take medication "only if recommended by the Community Health Provider."  ECF No. 9, Ex. 36.

---

[12] Corcoran had represented Owens-El at his Dec. 5, 2007 parole revocation hearing.  ECF No. 9, Ex. 32.

Sometime before his release, Owens-El filed a *pro se* petition for a writ of habeas corpus, alleging that the Parole Commission had unlawfully added the condition without due process.[13]  The district court rejected his claim, finding that the condition did not violate Owens-El's "constitutionally protected liberty interests in avoiding unwanted antipsychotic medication." *Owens*, 2010 WL 5173617, at *4.  The court found that Owens-El's record showed that his untreated mental illness made him dangerous to others, the Parole Commission and hearing examiner properly had considered the record, and the condition would not be imposed without a medical prescription from a licensed mental health care provider. *Id*.

On February 27, 2011, Owens-El brought this suit, alleging malicious prosecution, false arrest, unlawful detention in violation of the Fourth Amendment, and violation of due process under the Fifth and Fourteenth Amendments.  Compl. 7-15.  On May 5, 2011, the Defendants moved for summary judgment.  ECF No. 9.  On May 19, 2011, Owens-El opposed that motion.  ECF No. 10.  On June 14, 2011, the Defendants filed a reply.[14]  ECF No. 14.

II. Analysis

---

[13] *Owens*, 2010 WL 5173617, at *1-*2.  The date of Owens-El's petition is unknown.  *Id*.

[14] The reply was timely; the Court had granted the Defendants an extension to file the reply.  ECF No. 13.

In moving for summary judgment, the Defendants argue that: (1) they are immune to suit, (2) some of Owens-El's claims are time-barred, (3) the Federal Tort Claims Act bars the common law tort claims against the individual defendants, and (4) Owens-El has failed to allege facts linking the named Defendants to due process violations.  ECF No. 9 at 11-19.

A. Standard of Review

A court must grant summary judgment if the record shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must also abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to

trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. Counts I and II (Fourth Amendment violations)

Relying upon *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[15] Owens-El asserts in Counts I and II that his Fourth Amendment right against unreasonable seizures was violated when Probation Officers McBride and Wonneman[16] sought a violator warrant that lacked probable cause, and Chairman Fulwood and Case Analyst Vines issued the warrant. Compl. ¶¶ 31, 33. He claims a second violation occurred when his parole was revoked for his refusal to comply with the special mental health care conditions recommended by Vallandingham. Compl. ¶ 34. "Absent a determination by judicial decree that [he] was a threat to himself or others," Owens-El asserts that he could not be detained for refusing to accept the special parole conditions of medication, counseling, and treatment. Compl. ¶ 35. The Defendants counter that they have qualified immunity, because Owens-El has failed to show that they violated a clearly established constitutional right. ECF No. 9 at 15; ECF No. 14 at 3-5.

---

[15] 403 U.S. 388 (1971). *Bivens* recognized that a federal agent's conduct may give rise to a claim for damages for violations of a constitutional right. *Id.* at 395-96.

[16] Owens-El's complaint does not explain Wonneman's role in seeking the violator warrant, and he has presented no evidence related to Wonneman's actions.

Qualified immunity "strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). Government officials are shielded from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "In keeping with courts' reluctance to answer constitutional questions unnecessarily," a court may decide whether the constitutional right allegedly violated was clearly established without first deciding whether that right existed at all. *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011). Because it is an "immunity from suit rather than a mere defense to liability," qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

11

1. Parole Violator Warrants

Owens-El has not shown a clearly established right not to
be arrested on a parole violator warrant without probable cause.
"While parolees are protected against unreasonable searches and
seizures, their rights are not coextensive with those of
ordinary citizens."[17]   A parole violator warrant "is not to be
judged by the same standards" as an arrest warrant,[18] because the
"prisoner's guilt of crime has already been adjudged, sentence
of imprisonment has been imposed upon him, and the purpose of
the warrant is merely to restore him to custody and to advise
him of the purpose of his reincarceration."[19]   Thus, the
Defendants are entitled to qualified immunity from Owens-El's

---

[17] *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008)
(*quoting Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 873 (9th
Cir. 2007)).

[18] "The Fourth Amendment forbids 'unreasonable searches and
seizures,' and this usually requires the police to have probable
cause or a warrant before making an arrest" of an ordinary
citizen.   *Herring v. United States*, 555 U.S. 135, 136 (2009).

[19] *United States ex rel. Nicholson v. Dillard*, 102 F.2d 94, 96
(4th Cir. 1939) (internal quotation marks omitted).   *Accord Knox
v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) ("seizure of a
parolee requires something less than probable cause to be
reasonable under the Fourth Amendment"); *United States v.
Butcher*, 926 F.2d 811, 814 (9th Cir. 1991) ("probable cause is
not required to arrest a parolee for a violation of parole");
*United States v. Polito*, 583 F.2d 48, 55-56 (2d Cir. 1978) (the
detention of a parolee accused of violating his parole
conditions is not an "arrest" for purposes of the Fourth
Amendment); *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938)
(same).

claims of unreasonable seizure because the parole violator
warrant lacked probable cause.

2. Parole Revocation for Refusal to Take Medication

Owens-El also argues that the Defendants "ignored
established law in making an independent decision to add special
mental healthcare conditions to [his] parole and are not
entitled to qualified immunity for attempting to enforce
provisions of parole they were not authorized to enforce." ECF
No. 11 at 10.

The Supreme Court has recognized that "an individual has a
significant constitutionally protected liberty interest in
avoiding the unwanted administration of antipsychotic drugs.[20]  A
state may forcibly medicate a prisoner only if he has a serious
mental illness, is dangerous to himself and others, and the
treatment is in the prisoner's medical interest. *Washington v.
Harper*, 494 U.S. 210, 227 (1990).[21]  Similarly, the Government
may forcibly medicate a mentally ill defendant facing serious

---

[20] *Sell v. United States*, 529 U.S. 166, 178 (2003) (*quoting
Washington v. Harper*, 494 U.S. 210, 221 (1990)) (internal
quotation marks omitted).

[21] Although the Court did not mandate a procedure for ensuring
that forced medication comports with a prisoner's due process
rights, it emphasized the importance of having an independent
person decide whether to medicate. *Harper*, 494 U.S. at 233.  In
*Harper*, the Court concluded that the procedures provided by the
state (including notice, a hearing, and decision-makers who were
not involved in the prisoner's treatment) complied with due
process. *Id*. at 216, 236.

13

criminal charges to make him competent to stand trial only if "the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important government trial-related interests." *Sell*, 539 U.S. at 179.  The Supreme Court has not addressed whether these standards apply to parolees.

The Parole Commission has "broad authority" to place conditions on a grant of parole.  *See, e.g., Kennedy v. Altera*, 612 F.3d 261, 266 (4th Cir. 2010).  In *United States v. Holman*, the Fourth Circuit noted "some question" as to whether *Harper* and *Sell* "supplant[ed] or supplement[ed] the statutory requirements" for sentencing courts imposing conditions on supervised release.[22]   532 F.3d 284, 290 (4th Cir. 2008).  The

---

[22] The Sentencing Reform Act of 1984 replaced most forms of parole with supervised release, "a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission." *Johnson v. United States*, 529 U.S. 694, 696-97 (2000).  "Supervised release is similar to parole in essential respects." *United States v. Buchanan*, 638 F.3d 448, 451 (4th Cir. 2011).  A district court has "broad latitude" to impose a special condition on supervised release if it (1) is "reasonably related" to the defendant's history and characteristics, the nature of his offense, deterrence, protecting the public, and providing the defendant the most effective treatment; (2) "involves no greater deprivation of liberty than is reasonably necessary" to accomplish those aims; and (3) is consistent with the U.S. Sentencing Commission's advisory guidelines. *Holman*, 532 F.3d at 288; 18 U.S.C. § 3583(d).

*Holman* Court provided no answer; instead, it found that the special conditions in that case complied with both statutory requirements and *Harper* and *Sell*.[23] *Id.*

The Court is aware of only one federal circuit that has expressly applied *Harper* to the forced medication of prisoners on mandatory parole. In *Felce v. Fiedler*, the Seventh Circuit found that Wisconsin had violated *Harper* by failing to get an independent medical evaluation before requiring a parolee to have monthly injections of an antipsychotic drug. 974 F.2d 1484, 1498-1500 (7th Cir. 1992).[24] The *Felce* Court found that the parole officials were entitled to qualified immunity, because Felce's procedural rights "were not so clearly established" at the time of the alleged constitutional

---

[23] After Holman was released from prison, his probation officer petitioned for a hearing and the district court added two conditions to his supervised release: that Holman receive mental health care and take all prescribed medication. *Holman*, 532 F.3d at 286. The Fourth Circuit found the conditions proper because Holman had been violent in prison and had vanished after his release when he refused to take his medication, the district court's order was narrowly tailored to the circumstances, and the medication was medically appropriate. *Id.* at 290-91.

[24] The "primary decisionmaker," a parole agent, may have been biased because Felce had threatened a previous agent. *Felce*, 974 F.2d at 1499. The doctor who recommended the medication had treated Felce with antipsychotic drugs in prison and had been asked by the parole agent to prescribe the drugs. *Id.* The others who helped make the decision were "a direct line of supervisors" above the agent and "thus had individual interests in supporting his decision." *Id.*

violations.[25]  *Id.* at 1501.  *Harper* had not spoken "directly of the actions of parole agents" and had "not announce[d] a rigid constitutionally-based model to be followed throughout the Nation." *Id.* at 1496, 1501.

Because there are few cases on point, the Court cannot conclude that a reasonable parole or probation official would have known whether the process of recommending, adopting, and enforcing the special conditions of Owens-El's parole was unconstitutional.  The available cases above do not clearly establish a parolee's right to refuse forced medication as a condition of his parole absent a judicial finding that he is a threat to himself or others.[26]  Accordingly, the Defendants are entitled to qualified immunity[27] on Owens-El's claims that his

---

[25] The alleged violations in *Felce* occurred in November 1990. *Felce*, 974 F.2d at 1501.  *Harper* was decided in February 1990.

[26] The district court reviewing Owens-El's habeas petition determined that imposing the condition that he take prescribed medication did not violate his "constitutionally protected liberty interests in avoiding unwanted antipsychotic medication." *See Owens*, 2010 WL 5173617, at *4.

[27] Because the Court holds that qualified immunity applies, it need not address the Defendants' arguments that Commissioner Fulwood, Case Analyst Vines, and Probation Officer Vallandingham are entitled to absolute immunity.  ECF No. 9 at 11-14, 17-18. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).

parole revocation caused an unlawful detention.[28]

C. Counts III-VI(A) (Malicious Prosecution and False Arrest)

In Counts III and IV Owens-El alleges that the Parole Commission maliciously prosecuted him in 2007 by holding parole violation and revocation hearings that were not supported by probable cause. Compl. ¶¶ 40-45. He further asserts in Counts V and VI(A)[29] that the Parole Commission and the individual Defendants falsely arrested him for two weeks on "faulty evidence" that he threatened to kill, and for 22 months after he refused to take medication. Compl. ¶¶ 46-52. The Defendants counter that the claims are procedurally barred by the Federal Tort Claims Act ("FTCA").[30] Owens-El did not respond to this argument.

An FTCA action against the United States is the "sole remedy" for torts committed by a federal employee acting within the scope of his employment. *Jamison v. Wiley*, 14 F.3d 222, 227 (4th Cir. 1994). "Federal employees sued within the scope of their . . . employment are immunized, and the United States is

---

[28] Because the Court finds that qualified immunity applies, it need not address the Defendants' argument that the statute of limitations bars Counts I and II. ECF No. 9 at 15.

[29] Owens-El has captioned two different counts as Count VI. *See* Compl. 10-11. To avoid confusion, the Court has renumbered the first as "Count VI(A)" and the second as "Count VI(B)."

[30] 28 U.S.C. §§ 2761 *et seq.*

substituted in their place."[31]   Thus, when a plaintiff brings a tort claim against a federal employee acting within the scope of his employment, the Court has construed it as an FTCA claim.[32]

Absent a waiver, the United States is immune from suit. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).   The FTCA is a limited waiver of sovereign immunity but excludes claims arising out of false arrest, false imprisonment, and malicious prosecution.   28 U.S.C. § 2680(h).

Owens-El has brought claims of false arrest and malicious prosecution against the Defendants, "who acted in their capacities as United States federal employees," and "acted within the scope of their federal employment at the time of the incidents."   Compl. 1-2.   Thus, the United States is the proper defendant to those claims.   Because the FTCA bars false arrest and malicious prosecution claims, the Defendants are entitled to summary judgment on Counts III through VI.[33]

---

[31] *Benston v. Evans*, 170 F. App'x 269, 270 (4th Cir. 2006) (per curiam) (*citing* 28 U.S.C. § 2679).

[32] *See, e.g.*, *Ross v. Fed. Bureau of Alcohol, Tobacco & Firearms*, ---F. Supp. 2d.---, 2011 WL 3439412, at *5 (D. Md. Aug. 4, 2011) (tort claims against federal employees were "subsumed" by FTCA); *Samuel v. Palmer*, Case No. PJM 09-3141, 2010 WL 2976133, at *3 (D. Md. July 22, 2010) (because defendant was a federal employee, claim of tortious interference with business had to be analyzed under the FTCA).

[33] Because the Court finds that these claims are procedurally barred, it need not address the Defendants' argument that the

D. Counts VI(B)-IX (Violations of Due Process and Right to
   Counsel, and Impermissible Delegation of Judicial
   Authority)

The remainder of Owens-El's claims relate to the process by
which the special conditions of his parole were adopted.  In
Counts VI(B) and VII, Owens-El alleges that (1) the Probation
Office violated his right to due process by recommending special
conditions to his parole without a hearing, and (2) the Parole
Commission violated due process because it did not hold a
hearing or give Owens-El sufficient notice before conditioning
his parole on his taking psychotropic medication.  Compl. ¶¶ 55-
56, 66.  In Count VIII he asserts that the Parole Commission
violated his Sixth Amendment right to counsel by adopting the
medication condition without a hearing.  Compl. ¶¶ 69-70.  He
further asserts in Count IX that the Parole Commission
impermissibly delegated its judicial authority to the Probation
Office.  Compl. ¶ 74.

The Defendants counter that Owens-El has not named the
Parole Commission as a defendant[34] and sovereign immunity shields
the Parole Commission and Probation Office from *Bivens* claims.[35]

---

statute of limitations bars Counts III through VI.  ECF No. 9 at
15.

[34] Owens-El also has not named the Probation Office as a
defendant.

Counts VI(B) through IX allege violations by the Probation Office and the Parole Commission, neither of whom is a defendant.[36]  Because Owens-El fails to name the individual Defendants in his allegations,[37] they are entitled to judgment on Counts VI(B) through IX.[38]

---

[35] ECF No. 9 at 17-18.  The Defendants also contend that, because Owens-El was unsuccessful in his habeas action, *Heck v. Humphrey*, 512 U.S. 477 (1994), bars these claims.  *Id.* at 18-19.  The Court need not address this argument, however, because summary judgment will be granted to the Defendants on other grounds.

[36] Had Owens-El named the Parole Commission and Probation Office as defendants, they would have been shielded by sovereign immunity.  A plaintiff cannot bring a *Bivens* action against a federal agency.  *See Meyer*, 510 U.S. at 484-86; *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) ("a *Bivens* action does not lie against either agencies or officials in their official capacity") (emphasis omitted).

[37] To the extent that Owens-El asserts these claims against the individual defendants working for the Parole Commission and Probation Office, those individuals are entitled to qualified immunity.  *See supra* Part II.B.2.

[38] *See Jarvis v. Enterprise Fleet Servs. & Leasing Co.*, DKC 07-3385, 2010 WL 1068146, at *24 (D. Md. Mar. 17, 2010) (granting summary judgment to a defendant because the parties who allegedly committed the actionable conduct were not named as defendants); *McPherson v. Md. Pub. Emps. Council 67*, 943 F. Supp. 579, 584 (D. Md. 1996) (granting summary judgment to a defendant because, *inter alia*, the plaintiff had "not named the proper party defendant").  *Cf. Baird v. Haith*, 724 F. Supp. 367, 385 (D. Md. 1988) (defendants were entitled to dismissal for failure to state a claim when they were not named in the claim).

III. Conclusion

For the reasons stated above, the Defendants' motion for summary judgment will be granted.

_12/13/11_
Date

_____
William D. Quarles, Jr.
United States District Judge

21